### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARA LUCIOLA VILLA HERNANDEZ, | : | Civil No. 1:25-CV-01847 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL KUNES, Warden of Clinton County Correctional Facility, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

Before the court is a petition for writ of habeas corpus under 28 U.S.C.

§ 2241 filed by Petitioner Sara Luciola Villa Hernandez ("Hernandez").  (Doc. 1.)

Hernandez argues that she is being wrongfully detained without a bond hearing

under 8 U.S.C. § 1225(b) and, instead, should be immediately released or provided

an opportunity for a bond hearing under 8 U.S.C. § 1226.  For the reasons that

follow, the court will grant Hernandez's petition and order her released from

custody.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Hernandez is a 33-year-old native and citizen of Colombia.  (Doc. 1, ¶ 2;

Doc. 12-2, p. 5.)[1]  She entered the United States on or about January 19, 2024, was

encountered by United States Border Patrol agents that day, and arrested.  (Doc. 1,

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

¶ 3; Doc. 12-2, p. 5.)  The same day, United States Border Patrol issued and served

Hernandez with a Notice to Appear in immigration court for removal proceedings

under the Immigration and Nationality Act, § 212(a)(6)(A)(i), because she was in

the United States without being admitted or paroled.  (Doc. 1, ¶¶ 4–5; Doc. 12-3.)

United States Border Patrol then released Hernandez on her own recognizance

pending immigration proceedings.  (Doc. 1, ¶ 5; Doc. 12-2, p. 5.)

On August 9, 2025, Hernandez was a passenger in a vehicle that was the

subject of a traffic stop in Dallas Township, Pennsylvania.  (Doc. 1, ¶ 6; Doc. 12-2,

p. 5.)  Hernandez presented her Columbian passport, advised officers that she was

in immigration proceedings, and was detained by Immigration and Customs

Enforcement ("ICE") pending the completion of her immigration proceedings.

(Doc. 1, ¶ 6; Doc. 12-2, pp. 4–5.)  On August 19, 2025, the Department of

Homeland Security ("DHS") filed additional charges of inadmissibility/

deportability pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (Doc. 12-4.)

Hernandez, who is being held at the Clinton County Correctional Facility,

subsequently requested bond, which was denied on September 16, 2025.  (Doc. 1;

¶ 12; Doc. 12-5.)  An immigration judge found that pursuant to *Matter of Yajure*

*Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025), "Immigration Judges lack authority

to hear bond requests or grant bond to aliens who are present in the United States

without admission" pursuant to 8 U.S.C. § 1225.  (*Id.* at 2.)  Hernandez reserved

her right to appeal this decision.  (*Id.* at 3.)  On December 16, 2025, an

immigration judge ruled that Hernandez was inadmissible under Sections

212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act

("INA").  (Doc. 12-6, p. 2.)  The immigration judge ordered Hernandez removed to

Honduras in accordance with the Asylum Cooperative Agreement.  (*Id.* at 4.)

Hernandez appealed this decision, which is currently pending before the Board of

Immigration Appeals ("BIA").  (Doc. 17, pp. 2, 10–12.)

Meanwhile, on October 3, 2025, Hernandez filed the instant petition

requesting release from detention or a bond hearing against Michael Kunes and

Jason Kormanic, Wardens of Clinton County Correctional Facility; Todd M.

Lyons, Acting Director of ICE; Kristi Noem, Secretary of DHS; DHS; and Pamela

Bondi, Attorney General of the United States (collectively, "Respondents").[2]

(Doc. 1.)  A memorandum of law in support of the petition was filed on November

26, 2025, and Respondents responded on December 18, 2025.  (Docs. 9, 12, 13.)[3]

---

[2] Respondents, in a footnote, submit that the only proper respondent is Michael Kunes because he is the Warden of Clinton County Correctional Facility.  (Doc. 12, p. 1 n.1.)  In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent.  *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.")  The court will not address an argument requesting dismissal of other Respondents when only raised in a footnote.

[3] Upon review of Hernandez's memorandum of law, the court noted that certain pages were missing from the filing.  (*See* Doc. 9.)  The court requested that counsel refile the memorandum, which was done on January 8, 2026.  (*See* Doc. 13.)

No reply was filed by the December 24, 2025 deadline, thus, this petition is ripe for review.[4]

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States."  Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)).  Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted).  Hernandez is detained at the Clinton County Correctional Facility, which is within the Middle District of Pennsylvania. *See* 28 U.S.C. § 118(b).

## DISCUSSION

Before the court turns to the merits of Hernandez's petition, the court must address Respondents' arguments that this court lacks jurisdiction to resolve the

---

[4] The court requested supplemental letter briefs to address whether Hernandez's immigration status had changed during this litigation.  (Doc. 16.)  Based on a review of the parties' responses, Docs. 17 & 18, the court is satisfied that resolving the instant petition is appropriate.

petition for writ of habeas corpus before it and that Hernandez failed to exhaust her administrative remedies.

### A. The court has jurisdiction to resolve Hernandez's petition for writ of habeas corpus.[5]

Respondents assert that several sections of the INA, specifically 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii), deprive this court of jurisdiction to resolve the present petition.  (Doc. 12, pp. 21–29.)  As the court will explain, these arguments are without merit.

### 1.  8 U.S.C. § 1252(g)

Section 1252(g) of the INA provides, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Respondents argue that Section 1252(g) divests this court of jurisdiction because Hernandez challenges the method by which the Attorney General chose to commence removal proceedings, which includes the decision to detain Hernandez. (Doc. 12, pp. 22–24.)  But Section 1252(g) only applies to "those three specific actions themselves," *i.e.* commencement, adjudication, and execution of removal orders.  *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citing *Reno v. Am.-Arab*

---

[5] The court notes that on February 5, 2026, Respondents conceded that the court has subject-matter jurisdiction to rule on the merits of Hernandez's petition. (Doc. 18, p. 2–3.)  Nonetheless, the court will address the arguments previously raised by Respondents.

*Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *3 (M.D. Pa. Dec. 8, 2025).  Hernandez does not challenge the commencement, adjudication, or execution of a removal order.  Rather, she asserts that her detention under Section 1225(b) is unconstitutional.  (*See* Doc. 1.)  Thus, Section 1252(g) does not divest this court of jurisdiction.

### 2.  8 U.S.C. § 1252(b)(9)

Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 . . . to review such an order or such questions of law or fact.

Respondents submit that the court lacks jurisdiction in this matter because judicial review of a final removal order is only appropriate before a federal court of appeals.  (Doc. 12, pp. 24–29.)  Again, this argument misses the mark.  Section 1252(b)(9) is "designed to channel claims together for judicial review."  *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (citing *Reno*, 525 U.S. at 483).  However, "[i]t does not reach claims that are independent of, or wholly collateral to, the removal process, like claims that cannot effectively be handled through the available administrative process."  *Id.* (quoting *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st

Cir. 2007)) (internal quotation marks omitted).  Therefore, district courts are not

divested of jurisdiction when "aliens seek relief that courts cannot meaningfully

provide alongside review of a final order of review." *Id.*

### 3.  8 U.S.C. § 1252(a)(2)(B)(ii)

Section 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to

review . . . any other decision or action of the Attorney General or Secretary of

Homeland Security the authority for which is specified under this subchapter to be

in the discretion of the Attorney General or the Secretary of Homeland Security."

Respondents submit that this clarifies that courts cannot entertain a challenge to a

discretionary decision by the Attorney General or Secretary of Homeland Security.

(Doc. 12, p. 29.)  Hernandez is not challenging the discretionary decision to detain

her, rather, she is challenging whether Section 1225(b) properly applies to her.

(*See* Doc. 1.)  Seeking review of the extent of Respondents' authority to detain an

immigration detainee "is not a [challenge to a] matter of discretion." *Zadvydas v.*

*Davis*, 533 U.S. 678, 688 (2001); *see also Patel*, 2025 WL 3516865 at *3 (holding

same).  Thus, Section 1252(a)(2)(B)(ii) does not strip this court of jurisdiction to

consider Hernandez's petition.

### B.  Hernandez need not exhaust her administrative remedies.

Respondents assert that Hernandez's petition must be dismissed or stayed

because she failed to exhaust her administrative remedies before an immigration

judge and the BIA. (Doc. 12, pp. 29–32.) Typically, a petitioner is required to

exhaust her administrative remedies before filing a petition under Section 2241.

*Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (citations omitted).

But, there is no statutory requirement for exhaustion as "exhaustion exists only as a

judicially created doctrine applied at the Court's discretion." *Kashranov v.*

*Jamison*, 2:25-cv-5555, 2025 WL 3188399, at *4 (E.D. Pa. Nov. 14, 2025) (citing

*McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). And exhaustion "is likewise not

required when it would be futile." *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-cv-

5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025) (citation omitted). Here,

requiring Hernandez to exhaust her administrative remedies would be futile as the

BIA has held in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025),

that immigration judges lack the authority to hear bond requests for detainees held

pursuant to Section 1225. Thus, the court will not require Hernandez to do so and

will resolve her petition. *See, e.g.*, *Patel*, 2025 WL 3516865 at *4 (excusing

exhaustion requirement based on *Hurtado*); *Quispe v. Rose*, No. 3:25-cv-2276,

2025 WL 3537279, at *4 (M.D. Pa. Dec. 10, 2025) (same); *Demirel*, 2025 WL

3218243 at *4 (same).

    **C. The court will grant Hernandez's petition.**

    The court now turns to the merits of Hernandez's habeas petition.

Hernandez argues that she was improperly detained under Section 1225(b) of the

INA, which relates to applicants for admission.  (Docs. 1, 13.)  Hernandez submits

that she should have been detained, if at all, pursuant to 8 U.S.C. § 1226(a) and

provided a bond hearing because she has been in the United States since January

2024, and is thus, no longer an applicant for admission.  (Docs. 1, 13.)  Hernandez

requests the following forms of relief: the court order Respondents to release her

immediately on conditions of release as necessary; alternatively, the court conduct

a bond hearing or order an immigration judge to conduct a bond hearing;

alternatively, hold that her detention is governed by Section 1226, entitling

Hernandez to a bond hearing before an immigration judge; and award costs and

attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C.

§ 2412.  (Doc. 1, p. 21; Doc. 13, pp. 23–24.)

    Respondents agree that Hernandez is detained pursuant to Section

1225(b)(2)(A).  (Doc. 12, p. 19.)  They assert that Hernandez falls within the

statutory definition of "applicant for admission," she is properly detained under

Section 1225(b)(2), and Section 1226(a) is inapplicable to her.  (Doc. 12, pp. 32–

54.)  Respondents submit that the plain language of Section 1225(b)(2) requires

detention of applicants for admission and that the section's reference to noncitizens

"seeking admission" does not narrow the scope of Section 1225(b)(2).  (*Id.* at 32–

44.)  They further argue that their interpretation of Section 1225(b)(2)(A) does not

make Section 1226(a)'s discretionary detention authority superfluous and *Jennings*

does not undermine Respondents' interpretation.  (*Id.* at 44–54.)  Respondents also

assert that Hernandez's temporary detention does not violate due process.  (*Id.* at

54–59.)  Alternatively, if the court wishes to grant Hernandez's petition,

Respondents request that the court order a bond hearing rather than releasing

Hernandez.  (*Id.* at 59.)

Section 1225 of the INA is titled "Inspection by immigration officers;

expedited removal of inadmissible arriving aliens; referral for hearing."  8 U.S.C.

§ 1225.  It defines "applicant for admission" as "[a]n alien present in the United

States who has not been admitted or who arrives in the United States . . . ."  *Id.*

§ 1225(a)(1).  Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an
> applicant for admission, if the examining immigration officer
> determines that an alien seeking admission is not clearly and beyond a
> doubt entitled to be admitted, the alien shall be detained for a
> proceeding under section 1229a of this title.

Noncitizens subject to this mandatory detention may only be released while their

removal proceedings are pending "for urgent humanitarian reasons or significant

public benefit."  *Jennings*, 583 U.S. at 288.  The BIA recently decided *Matter of*

*Yajure Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025), wherein the BIA held that

noncitizens who enter the United States without admission are subject to

mandatory detention under Section 1225(b)(2)(A), and thus, immigration judges

lack the authority to provide a bond hearing.

Conversely, 8 U.S.C. § 1226(a) provides, in relevant part:

(a) Arrest, detention, and release
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
>> (a) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>> (b) conditional parole; but
> (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

The parties agree that Hernandez is detained pursuant to Section 1225(b)(2)(A) and neither party alleges that Hernandez is subject to Section 1226(c).[6] (*See* Docs. 1, 12.)

Federal district courts across the country and within this district have, overwhelmingly, rejected Respondents' position regarding the applicability of Section 1225(b)(2)(A) to detainees like Hernandez, a noncitizen who previously entered and had been living in the United States prior to her detention.[7] *See, e.g.,*

---

[6] Section 1226(c) requires detention of noncitizens who are inadmissible or deportable because they have committed a criminal offense identified in this section. 8 U.S.C. § 1226(c).

[7] The court acknowledges that there are some district courts, as well as the Fifth Circuit Court of Appeals, who have agreed with Respondents' interpretation of Section 1225. (*See* Doc. 18, p. 3 n.1.) *Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026). However, none of these decisions are binding on this court.

*Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-cv-1896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.) (adopting report and recommendation finding that Section 1225 was inapplicable to petitioner); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025) (collecting cases within the Third Circuit as of December 8, 2025); *Quispe v. Rose*, 3:25-cv-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025) (holding that petitioner was improperly detained under Section 1225(b)(2)(A)); *Patel v. O'Neill*, 3:25-cv-2289, 2026 WL 323121 (M.D. Pa. Feb. 6, 2026) (same).  "The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of *Hurtado*, as contradictory to the plain text of § 1225."  *Demirel*, 2025 WL 3218243 (citing *Ayala Amaya v. Bondi*, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases)).

The court is persuaded by and agrees with the majority of federal district courts that have ruled on this issue to date in rejecting Respondents' interpretation of Section 1225(b)(2)(A).  Hernandez's detention under Section 1225(b)(2)(A) is unlawful because Section 1225(b)(2)(A) "applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States."  *Bethancourt Soto v. Soto*, No. 25-cv-16200, --- F. Supp. 3d ----, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025).  Thus, this section simply does not apply to someone like

Hernandez, who has been residing in the United States for over two years. *Id.*

(collecting cases adopting the same conclusion).

In reaching this conclusion, the court holds that Respondents' interpretation

of "seeking admission" violates the rule against surplusage and contradicts the

plain meaning of the statutory text. *Bethancourt Soto*, 2025 WL 2976572 at *5

(finding that respondents' interpretation "violates the rule against surplusage and

negates the plain meaning of the text."); *see also Patel*, 2025 WL 3516865, at *5

(citing *Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025

WL 3294726, at *5 (E.D. Pa. Nov. 25, 2025)) (same). If Section 1225(b)(2)(A)

applied to every "applicant for admission," the phrase "seeking admission" would

become unnecessary and surplusage.[8]  *Bethancourt Soto*, 2025 WL 2976572 at *6

(citations omitted); *see also United States ex rel. Polansky v. Exec. Health Res.,*

*Inc.*, 599 U.S. 419 (2023) (explaining that "every clause and word of a statute

should have meaning" and "no clause, sentence, or word shall be superfluous,

void, or insignificant"). Further, "seeking admission" connotes "some affirmative,

---

[8] *Bethancourt Soto*, 2025 WL 2976572 at*6, provides a helpful example of why Respondents'
interpretation violates the rule against surplusage:

> [R]emoving the words "seeking admission" from § 1225(b)(2)(A) would not alter its
> meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for
> admission, if the examining immigration officer determines that an alien ~~seeking admission~~
> is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]"
> That result is inconsistent with the principle that courts must interpret a statute to give
> meaning to "every clause and word" that Congress chose to include. *See* Polansky, 599
> U.S. at 432, 143 S.Ct. 1720 (quotation marks omitted).

present-tense action" such that it "requires an act currently underway not a static condition." *Id.* at *5 (citations omitted). Thus, Respondents' argument that Section 1225(b)(2)(A) does not require any "affirmative act" is contrary to the plain meaning of the words "seeking admission."[9]

Respondents' interpretation also makes Section 1226(c)'s mandatory detention provision superfluous and redundant. *Centeno Ibarra*, 2025 WL 3294726 at *6 ("Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

In sum, Hernadez is not currently "seeking admission" to the United States. That was her status in January 2024. At that time, an immigration official made the decision to release her in the United States on her own recognizance.

---

[9] Again, the examples provided by the court in *Bethancourt Soto*, 2025 WL 2976572 at *6, are illustrative of why Respondents' argument fails:

> For example, one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." *Benitez*, —— F.Supp.3d at ——, 2025 WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' ... at that point— one would say that they had entered unlawfully but now seek a lawful means of remaining there." *Id.*

Therefore, Section 1225(b)(2)(A) does not apply to her as she is not currently "seeking admission" to the United States.

Addressing Hernandez's constitutional claims, it is undisputed that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).  Thus, the court must determine what process is due to Hernandez, who is currently subject to mandatory detention without a bond hearing, by applying the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *Mathews* requires the court to weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The first factor weighs heavily in Hernandez's favor because the "official action" has deprived her of her physical liberty.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by one's own government.").  The second factor similarly swings in Hernandez's favor because she "is presently and *erroneously*

detained under the mandatory detention provisions of § 1225, without an

opportunity for a bond hearing." *Bethancourt Soto*, 2025 WL 2976572 at *8

(emphasis in original). As to the third factor, the court recognizes Respondents'

interest in detaining noncitizens to ensure "the appearance of aliens at future

immigration proceedings" and "preventing danger to the community." *Zadvydas*,

533 U.S. at 690. Still, this factor weighs in favor of Hernandez because

Respondents do not contend that she has a criminal record, that she poses a danger

to the community, or that she is a flight risk. Accordingly, the *Mathews* factors

weigh in Hernandez's favor and the court finds that her mandatory detention

without a bond hearing under Section 1225(b)(2)(A) violates her procedural due

process rights. *See Bethencourt Soto*, 2025 WL 2976572 at *8 ("Taken together,

the Court finds that the *Mathews* factors weigh decisively in Petitioner's favor, and

as such his mandatory detention under § 1225(b)(2)(A) violates his procedural due

process rights.") (citations omitted); *Patel*, 2025 WL 3516865 at *6 (holding

same). Thus, the court will grant Hernandez's petition and release her on her own

recognizance as the United States Border Patrol did in January 2024.

**D. The court will award EAJA fees and costs.**

Hernandez requests costs and reasonable attorneys' fees as provided by the

EAJA, 28 U.S.C. § 2412. (Doc. 1, p. 21.) Respondents refer the court to a then-

pending Third Circuit case addressing whether EAJA fees can be obtained in

immigration habeas petitions and argue that any EAJA fees should not be permitted until the underlying immigration proceedings have also concluded. (Doc. 12, pp. 60–61.)  Since Respondents filed their brief, the Third Circuit decided *Michelin v. Warden Moshannon Valley Correctional Center*, --- F.4th ----, 2026 WL 263483 (3d Cir. Feb. 2, 2026).  The court held that a petition for writ of habeas corpus from immigration detention under Section 2241 is a "civil action" under the EAJA.  *Id.* at *1.  Because the present action is a Section 2241 petition regarding immigration detention, it is a civil action.  Thus, Hernandez will be permitted to file a motion for costs and fees pursuant to the EAJA within thirty days of the entry of judgment.

## CONCLUSION

For these reasons, the court will grant Hernandez's petition for writ of habeas corpus and order her immediate release.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: February 13, 2026